UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LORETTA MARIE STANLEY

Plaintiff,

-vs-                                                    Case No.  6:05-cv-1577-Orl-19DAB

LIFE INSURANCE COMPANY OF
NORTH AMERICA

Defendant.

_____

# ORDER

This case comes before the Court on the following:

1.      Defendant Life Insurance Company of North America's Motion to Strike Plaintiff's
        Demand for Jury Trial and Incorporated Memorandum of Law.  (Doc. No. 9, filed on
        November 4, 2005);

2.      Defendant Life Insurance Company of North America's Motion to Dismiss Counts B
        and C of Plaintiff Loretta Marie Stanley's Complaint and Memorandum of Law.  (Doc.
        No. 10, filed on November 4, 2005); and

3.      Plaintiff Loretta Marie Stanley's Response in Opposition to Defendant's Motion to
        Strike and Motion to Dismiss and Attached Exhibits.  (Doc. No. 43, filed on March 1,
        2006).

## Background

The following allegations are drawn from Plaintiff Loretta Marie Stanley's Complaint.  (Doc.
No. 2, filed on October 20, 2005).

On or about October 1, 1991, Life Insurance Company of North America (" the Company") issued to Loretta Stanley an insurance policy as the employee beneficiary and certificate holder of a group life insurance policy on the life of her then husband, Paul John Stanley, in the amount of $100,000.  (*Id.* at ¶ 4).  On July 28, 1997, Loretta and John Stanley obtained a dissolution of marriage by Order of the Circuit Court of Brevard County, Florida.  (*Id.* at ¶ 6).  Loretta Stanley continued to fulfill her obligations pursuant to the terms of the policy, and her employer deducted the policy premiums from her paycheck on a timely basis.  (*Id.* at ¶ 10).

At all times after the issuance of the policy, Loretta Stanley believed that the policy was in full force and effect, including on the date of the death of Paul Stanley on September 11, 2003.  (*Id.* at ¶ 5).  After the death of Paul Stanley, Loretta Stanley advised the Company of the death and claimed the benefits due from the group life insurance policy.  (*Id.* at ¶ 7).  The Company advised Loretta Stanley that the group life insurance coverage and all certificates had been terminated on January 1, 2002.  (*Id.* at ¶ 8).

Loretta Stanley alleges that she never received notification from anyone that the group life insurance policy insuring the life of Paul Stanley was not in full force and effect prior to the death of Paul Stanley.  (*Id.* at ¶ 9).  Furthermore, she claims that she never received a refund of the paid premiums.  (*Id.* at ¶ 12).

On September 8, 2005, Plaintiff Loretta Marie Stanley filed a complaint against Defendant Life Insurance Company of North America in the Circuit Court of the Eighteenth Judicial Circuit.  (Doc. No. 1).  The complaint contains claims for breach of contract, common law bad faith, and a violation of Florida Statutes, Section 624.155, arising out of Defendant's failure to pay life insurance benefits to Plaintiff after receiving notice of the death of Paul Stanley.  (Doc. No. 2).  On October 20, 2005, the

case was removed to this Court.  (Doc. No. 1).

On November 4, 2005, Defendant filed a Motion to Strike Plaintiff's Demand for a Jury Trial and a Motion to Dismiss Counts B and C of Plaintiff's Complaint.  (Doc. No. 9); (Doc. No. 10). Defendant argues that Plaintiff's complaint falls under ERISA and that there is no right to a jury trial for claims under ERISA.  Defendant further argues that the Court should dismiss the common law and statutory bad faith counts because the allegations do not fall within ERISA's savings clause and are therefore preempted by ERISA.

On March 1, 2006, Plaintiff responded to Defendant's Motion to Strike and Motion to Dismiss by filing a memorandum of law and numerous exhibits.  (Doc. No. 43).  Plaintiff argues that the life insurance policy meets the safe harbor provision of 28 C.F.R. 2510.3-1(j) and therefore does not qualify as an ERISA plan.  Plaintiff also contends, by relying on numerous exhibits and documents attached to her response, that the life insurance policy is not governed by ERISA because it is not maintained by an employer, that the employer never acted as the plan administrator for the policy, and that the policy is not an ERISA benefit because there is no ascertainable class of beneficiaries.

This Order analyzes Defendant's Motion to Strike and Motion to Dismiss.

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Furthermore, the Court must limit its consideration to this pleading and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  A complaint should not

-3-

be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would show entitlement to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## Analysis

At the outset, the Court notes that because Defendant filed a Motion to Dismiss and not a Motion for Summary Judgment, it is improper for Plaintiff to file exhibits in support of her response to the Motion to Dismiss.  At the motion to dismiss stage, the Court may only rely upon the allegations contained within the four corners of the complaint.  If a party wants to assert arguments and issues that are not within the four corners of the complaint, then that party may file a Motion for Summary Judgment.

Defendant argues that Plaintiff's claims are governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101, *et seq.*, and therefore Plaintiff's demand for a jury trial must be stricken.  Defendant further claims that the Court must dismiss the common law and statutory bad faith claims because they have been preempted by ERISA.

As a starting point, the Court addresses whether the life insurance policy falls within the regulatory safe harbor that has been promulgated by the Secretary of Labor.  *See Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n.2 (11th Cir. 2004).  This safe harbor, which excludes from ERISA's gambit certain group insurance policies, provides:

> (j) *Certain group or group-type insurance programs.*  For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the

program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). If an employer fails to satisfy each and every one of these provisions, the safe harbor is closed, and the plan is exposed to the strictures of ERISA if it otherwise qualifies under federal law. *See Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995) ("Failure to fulfill any one of the four criteria listed in the regulation, however, closes the safe harbor and exposes a group insurance program, if it otherwise qualifies as an ERISA program.").

An employer has endorsed a plan, if "in the light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the plan's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package." *Id.* at 1135. This requirement parallels the policy underlying the regulations. *Id.* at 1133. "[T]he absence of employer involvement vitiates the necessity for ERISA safeguards." *Id.*

Pursuant to the safe harbor regulations, an employer may publicize a program and collect its employees' premium payments without endorsing the policy. *See Randol v. Mid-West Nat'l Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1551 (11th Cir. 1993) (finding employer's publication and payroll deduction *alone* is outside ERISA). This was the situation in *Riggs v. Smith*, 953 F. Supp. 389 (S.D. Fla. 1997), where the employees asked their employer for insurance, and the employer solicited quotes and arranged times for presentation of insurance plans. 953 F. Supp. at 396. There was no evidence that the employer steered its employees toward any particular plan over another, and on this basis the

Court concluded that "[a]s in *Johnson*, the employer separate[d] itself from the program, making it reasonably clear that the program [was] a third party's offering, not subject to the employer's control." 953 F. Supp. at 396 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995)) (internal quotations omitted).

On the other hand, the Eleventh Circuit has found endorsement where the employer: picked the insurer; decided on key terms, such as the portability and the amount of insurance coverage; deemed certain employees ineligible to participate in the plan; incorporated the insurance contract terms into the self-described summary plan description for its cafeteria plan; and retained the power to alter compensation reduction for tax purposes.  *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213-14 (11th Cir. 1999).  Likewise in *Belknap v. Hartford Life & Accident Ins. Co.*, the Court found an employer had endorsed a plan where the employer's logo appeared on documents relating to a benefit program, those documents specifically stated that the employer provided the employee with "security and protection" by offering disability benefits, the employer established the plan's enrollment and eligibility requirements, the agent for service of legal process relating to claims based on the plan was an executive officer of the employer, and the plan actually stated that ERISA was the governing law.  389 F. Supp. 2d 1320, 1324 (M.D. Fla. 2005).

Applying this framework to the allegations of the instant case, the complaint alleges that the employer merely deducted all premium payments from Plaintiff's regular paycheck.  There are no allegations that the employer played any other role in terms of managing or exercising control over the policy, that the employer made contributions to the policy, that participation in the program was either voluntary or involuntary, or that the employer received consideration in connection with the program. Because of the lack of allegations in the complaint relating to the employer's management, control,

and participation in the policy and the affirmative allegation that the employer only deducted premiums from Plaintiff's paycheck, the Court cannot make a specific finding that the life insurance policy does not fall within the safe harbor provision.

Assuming that the life insurance policy did not fall within the safe harbor provision, the policy does not necessarily fall within the reach of ERISA. *Butero*, 174 F.3d at 1214. The Court must also determine whether the plan in this case is an "employee welfare benefit plan" as defined by ERISA. *Id.* An "employee welfare benefit plan" is defined in part as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,
>
> > **(A)** medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

29 U.S.C. § 1002(1). The Eleventh Circuit has stated that an employee benefit plan governed by ERISA requires, by definition, "(1) a plan, fund, or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing . . . death. . . benefits . . . (5) to participants or their beneficiaries." *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982). Thus, the question in this case reduces to whether Plaintiff's employer intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship. *Anderson*, 369 F.3d at 1264.

Under ERISA, "a plan is established when there has been some degree of implementation by the employer going beyond the mere intent to confer a benefit." *Id.* (internal quotations and modifications omitted). The term suggests that the employer intends to make the plan stable and firm or, in other words, "to provide benefits on a regular and long term basis." *Id.* at 1265. Thus, acts or

events that record, exemplify or implement an employer's decision to extend benefits are "direct or circumstantial evidence that the decision has become reality--e.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists." *Donovan*, 688 F.2d at 1373.

Moreover, even if Plaintiff's employer did not originally establish the plan, ERISA would still apply if the employer maintained the policy. *Anderson*, 369 F.3d at 1265. An employer maintains a plan when it provides for the continuation of the plan through such means as involving itself in the payment of benefits, changing the critical terms of the policy, or performing all the administrative functions associated with the maintenance of the plan." *Id.* at 1265.

In either case, the Eleventh Circuit suggests the following seven factors are relevant in determining the existence of an employee welfare benefit plan: (1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent. *Id.*

Relying on the allegations contained in the complaint, Plaintiff has alleged that the employer only deducted premium payments from her paycheck. There are no allegations relating to employer's representations, either oral or written, the employer's establishment of a fund to pay benefits, the employer's actual payment of benefits, the employer's deliberate failure to correct known perceptions of a plan's existence, the employer's intent, or the reasonable understanding of employees. While Plaintiff has proffered documents in support of her argument that these seven elements weigh in her favor, at the motion to dismiss stage, the Court must rely on the allegations contained within the four

corners of the complaint.  Because the allegations in the complaint, standing alone, do not demonstrate that the employer established or maintained the policy, the allegations of the complaint do not establish that the policy constitutes an employee welfare benefit plan pursuant to 28 U.S.C. section 1002(1).

The sparse allegations contained in the complaint raise the question of the Court's subject matter jurisdiction to adjudicate the issues in this case.  In its Notice of Removal, Defendant stipulated that Plaintiff is a Florida resident and that Defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania.  (Doc. No. 1, ¶ 4).  Defendant further claimed that the Court has both federal question jurisdiction pursuant to ERISA and diversity jurisdiction (*Id.* at ¶ 8).  Defendant also submitted the affidavit of Brian Billeter, an employee of Defendant, who averred that the life insurance policy is part of an "employee welfare benefit plan" as that term is used in ERISA.  (Doc. No. 1, Ex. A, ¶ 3).  In Plaintiff's complaint, she alleges that Defendant is a foreign corporation licensed to do business in Florida and that Plaintiff is a resident of Florida.  (*Id.* at ¶¶ 1, 2).  Plaintiff also seeks compensatory damages in the amount of $100,000.

A defendant may remove from state court to federal court "any civil action ...of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Generally, a defense that the plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction which is determined by reference to the allegations that appear on the face of the complaint.  *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 45 (2d Cir. 2002) (internal citations omitted).  However, in the case of state law claims that fall within the civil enforcement provisions of ERISA section 502, Congress has determined that such claims are removable on the grounds that they are "'of necessity so in federal character that [they] arise [] under federal law for purposes of 28 U.S.C. § 1331.'"  *Id.*  (internal citations omitted).  In complete

preemption cases, "the *burden* is on the *defendant*, as the party asserting federal jurisdiction, to demonstrate the propriety of removal." *Id.* at 46 (internal citations omitted) (italics added); *see also Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1242 (11th Cir. 2002) (explaining that the party seeking removal "has the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence.") (internal citations omitted).

In the instant case, Defendant has submitted conclusory averments contained in its Notice of Removal and the affidavit of Brian Billeter.  The availability of ERISA's preemption as a basis of federal question jurisdiction cannot be triggered by calling a particular insurance policy an ERISA plan and alleging that Plaintiff's claim relates to it.  *See id.*  A recognition of federal question jurisdiction under such circumstances would leave the existence of jurisdiction up to mere speculation.   Because of the lack of allegations in the complaint regarding the ERISA status of the life insurance policy, the Court is unable to make a specific finding as to whether the plan falls under ERISA.  Thus, the Court is unable to reach a conclusion regarding the existence of federal question jurisdiction.

Examining the allegations in the complaint with regard to existence of diversity jurisdiction, it is alleged that Plaintiff and Defendant are citizens of different states and that the amount in controversy is in excess of $75,000.[1]  Therefore, the Court has subject matter jurisdiction in this case

---

[1] 28 U.S.C. section 1332(c)(1) governs the Court's analysis in determining the citizenship of Defendant, a corporation:

> [A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

Applying this provision to the allegations in the instant case, it has not been alleged that

due to diversity of citizenship between the parties.

<u>**Conclusion**</u>

Based on the foregoing, the Court rules as follows:

1.      Defendant Life Insurance Company of North America's Motion to Strike Plaintiff's
Demand for Jury Trial is **DENIED** without prejudice to assert on Motion for Summary
Judgment if appropriate.  (Doc. No. 9).

2.      Defendant Life Insurance Company of North America's Motion to Dismiss Counts B
and C of Plaintiff's Complaint is **DENIED** without prejudice to present the matters
asserted on a Motion for Summary Judgment with proper evidentiary support, if
appropriate.  (Doc. No. 10).


**DONE** and **ORDERED** in Chambers in Orlando, Florida on March _31st___, 2006.


PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

Defendant is a citizen of Florida or that Florida is the principal place of business of Defendant.
Because this is not a case in which the cause of action against the insurance company is of such a
nature that the liability sough to be imposed could be imposed against the insured, the action is
not a direct action under section 1332(c)(1).  *Fortson v. St. Paul Fire and Marine Ins. Co.*, 751
F.2d 1157, 1159 (11th Cir. 1985) (explaining that "where the suit brought either by the insured
or by an injured third party is based not on the primary liability covered by the liability insurance
policy but on the insurer's failure to settle within policy limits or in good faith, the section
1332(c) direct action proviso does not preclude diversity jurisdiction.") (internal citations
omitted).  Therefore, Defendant cannot be deemed a citizen of the state of the insured.

Copies furnished to:

Counsel of Record